IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| CATHLEEN L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | § § § § § § § § § § § § § <br><br> 2:22-CV-62-Z-BR |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM
THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff, Cathleen L., ("Cathleen") seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(c). After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I.     PROCEDURAL BACKGROUND**

Cathleen sought Title II disability insurance benefits on February 28, 2020, retroactive to January 1, 2018, due to "carpal tunnel syndrome, liver disease, osteoarthritis in her back and

---

[1] It is this Court's practice to identify the plaintiff using only the first name and last initial in determinative opinions in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

hips, restless leg syndrome, diabetes, and lung disorder." (ECF 18 at 4). Cathleen's claim was initially denied on October 22, 2020 and again on January 14, 2020 upon reconsideration. (*Id.*).

In his sequential analysis under 20 C.F.R §§ 404.1520(a) and 416.920(a), the ALJ found that although Cathleen suffered from "degenerative disc disease of the lumbar spine, obesity, and degenerative joint disease of the bilateral hands," she did not have an impairment or combination of impairments that met the requirements for a disability finding. (ECF 16-1 at 26, 28). Specifically, the ALJ concluded that Cathleen's "allegation of disabling impairments is unsupported by the record," and that she retained the ability to perform light work, such as her past employment as a cashier. (*Id.* at 29–31). The ALJ also incorporated modest limitations, which included limiting activities such as climbing, exposure to extreme temperature and hazards, and working with machinery. (*Id.* at 26).

In support of his conclusion, the ALJ first considered Cathleen's medical treatment records, which the ALJ found were "not consistent" with Cathleen's "subjective reports of disabling symptoms and suggest that [her] symptoms are not as severe as alleged." (*Id.*). The ALJ also considered the opinions of state agency medical consultants, two state agency psychological consultants, and Cathleen's treating physician. (*Id.* at 27–28). The medical consultants were persuasive to the ALJ, who characterized their opinions as "generally supported" by the other information in the record, though the ALJ added additional restrictions not found in their opinions. This addition was based on information apparently not available to the consultants, including updated imaging results and Cathleen's testimony. (*Id.* at 27). Likewise, the ALJ found the opinions of the consulting psychologists persuasive, noting in particular their finding, which was supported by the primary care doctor, that Cathleen "presented with intact mental status findings" despite her complaints of anxiety. (*Id*. at 27–28).

2

Upon consideration of the assessment provided by Cathleen's primary care provider, Dr. Bethany Pickard, the ALJ found it lacking "adequate support and is otherwise inconsistent with the remaining evidence of record." (*Id.*). The ALJ in particular noted not only Dr. Pickard's failure to include supportive evidence or rationale for her proposed restrictions, but also that "her own treatment notes cite examination findings that are unsupportive of such limitations, including consistently normal gait." (*Id.*). The ALJ also found that Dr. Pickard's proposition that Cathleen could not use her hands, fingers, and arms for fifty percent of the workday was inconsistent with and unsupported by the medical records because degenerative disc disease was the only specific diagnosis provided by the doctor. (*Id.*).

Following the ALJ's decision, the Appeals Council denied Cathleen's request for review on January 27, 2022. (ECF 18 at 5). Consequently, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. § 405(g); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.   FACTUAL BACKGROUND

Cathleen was fifty years old at the time of the alleged onset of disability. (ECF 20 at 1). She had graduated high school and possessed prior work experience as a cashier, convenience store clerk, and nurse's aide. (*Id*. at 2; ECF 18 at 5).

## III.   STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security

3

regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC (residual functional capacity) is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, a court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the

claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices," or, "no contrary medical evidence," will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV. DISCUSSION

Cathleen presents a single argument as to why the Commissioner's decision should be reversed: the RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Cathleen's treating physician, Dr. Pickard. (ECF 18 at 10). The Commissioner responds that the ALJ properly evaluated Dr. Pickard's opinion. (ECF 20 at 6). Cathleen finely tunes her argument in reply, arguing "the ALJ committed legal error in evaluating the persuasiveness of Dr. Pickard's opinion." (ECF 21 at 2).

**A. Required Analysis of 20 C.F.R. § 404.1520c**

On January 18, 2017, the SSA published *Revisions to Rules Regarding the Evaluation of Medical Evidence*, which revised the regulations regarding medical opinion evidence considered in disability determinations. 82 Fed. Reg. 5844. For claims filed on or after March 27, 2017, an ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)).

Instead, the ALJ shall consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency…" 20 C.F.R. § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered the other three factors when he articulates how he considered the medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). The other three factors must be articulated, however, if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the

6

record . . . but are not exactly the same[.]" 20 C.F.R. § 404.1520c(b)(3). When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." 20 C.F.R. § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.*

Furthermore, the ALJ is not required to address any particular factor or piece of evidence in a specific portion of the opinion. *Jones v. Colvin*, 638 F. App'x 300, 304–05 (5th Cir. 2016) (unpublished). Instead, the ALJ's decision should be upheld so long as the sufficient analysis and discussion of the required factors is found throughout the opinion. *Id.*

Cathleen contends that the ALJ failed to adequately explain "his findings regarding the supportability and consistency" of Dr. Pickard's opinion. (ECF 18 at 16). Had the ALJ done so, she continues, "a finding of disability would be warranted." (*Id.*). The Commissioner points out that the ALJ did consider Dr. Pickard's opinion but by and large dismissed it because it was inconsistent with and unsupported by the record, to which Cathleen responds that a "general summary of medical evidence elsewhere in the decision" fails to forge a connection between the evidence and the dismissal of Dr. Pickard's opinion. (ECF 20 at 6–7; ECF 21 at 4).

The logical connection between the level of persuasiveness the ALJ gave to Dr. Pickard's opinion and the objective medical evidence is quite clear, as is the analysis required of the ALJ under 20 C.F.R. § 404.1520c(b)(2). The ALJ begins with a multi-page recitation of the objective medical evidence, which includes a reference to the hip arthritis that Cathleen claims was

ignored, before addressing the opinions of each of the five doctors, with Dr. Pickard being the last. (ECF 16-1 at 25–28; ECF 21 at 3).

When turning to address Dr. Pickard's opinion, the ALJ wrote that, "it lacks adequate support and is otherwise inconsistent with the remaining evidence of record," (ECF 16-1 at 28), before continuing on to list three specific examples to support that conclusion. (*Id.*). Far from failing to address supportability and consistency in his decision, the ALJ cited those two factors as his reason for disregarding Dr. Pickard's opinion. (*Id.*). The ALJ also found three specific points to support his conclusion, and properly cited to four exhibits as evidence. (*Id.*).

The recitation of the evidence and the ALJ's discussion of it may be in different parts of the opinion, many pages apart, but that does not evince any disregard for the evidence by the ALJ. To the contrary, that the ALJ specifically detailed each piece of evidence considered in totality before then addressing its supportability and consistency likewise demonstrates an appropriate analysis under the law. The ALJ is not required to methodically detail one piece of evidence and his analysis of it before turning to another piece. Such a requirement would be inconsistent with the Court's role in reviewing the ALJ's decision and amount to little more than an improper usurpation of the ALJ's role. That the ALJ followed an analytical format different than what Cathleen argues would be proper in writing his opinion does not invalidate the ALJ's analytical procedure. Quite the opposite, the ALJ's analysis was sufficient under the law.

## V.  RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Commissioner's decision be AFFIRMED.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO ORDERED.

ENTERED October 20, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).